THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CRIMINAL CASE NO. 3:09-cr-00060-MR-1

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **O R D E R** |
| ) | |
| RICARDO JAVIER ARELLANO, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Defendant's "Motion for Compassionate Release and Reduction of Sentence Under The First Step Act of 2018; and In Light of United States v. McCoy, [981 F.3d 271, 282 (4th Cir. 2020)]" [Doc. 76]; the Government's Response in Opposition [Doc. 79]; and the Defendant's Reply [Doc. 80].

**I.    BACKGROUND**

Between December 2008 and February 2009, the Defendant Ricardo Javier Arellano committed the armed robbery of three banks in Western North Carolina. [Doc. 38: PSR at ¶¶ 6-10]. During the first robbery in December 2008, the Defendant went to the home of an employee of the First Citizens Bank in Indian Trail, North Carolina. [Id. at ¶ 6]. As he entered the employee's home, the Defendant encountered one of the employee's two

children who were in the home. [Id.]. The Defendant bound the employee and her two children with black duct tape and put the children into one of the bedrooms in the home, warning them not to make any noise or go anywhere because there were others who were watching. [Id.]. The Defendant then forced the employee into her car and drove the car to the bank, where he forced the employee to go into the bank and disable the alarm. [Id.]. When another employee arrived at the bank, the Defendant confronted her with what appeared to be a handgun and ordered both employees to open the bank's vault. [Id.]. The Defendant stole more than $25,000 in cash, after which he bound the second employee with duct tape and dropped the first employee back at her home before abandoning her car and escaping. [Id.].

A month after the first bank robbery, the Defendant committed a second bank robbery. [Id. at ¶ 7]. The Defendant hid near the door of a Truliant Federal Credit Union in Charlotte, North Carolina, and waited for employees to arrive for work. [Id.]. Forcing his way in after an employee opened the door of the bank, the Defendant bound two employees with duct tape, threatening them with a gun. [Id.]. The Defendant forced the employees to open the vault, and the Defendant stole more than $22,000 before escaping. [Id.].

In February 2009, a little over a month after the second bank robbery, the Defendant robbed a Bank of America in Charlotte, North Carolina. [Id. at ¶ 8]. The Defendant, who had been terminated from his employment at Bank of America six months earlier, tricked the bank manager into opening the door of his bank by showing what appeared to be a valid Bank of America identification card. [Id.]. The Defendant then forced his way into the bank, and during a fight with the manager, pulled out what appeared to be a handgun. [Id.]. The Defendant bound the manager and three additional employees who arrived for work at the bank with duct tape and forced some of the employees to open the vault for him. [Id.]. The Defendant stole more than $100,000 from the bank. [Id.].

The Defendant was arrested a few days later and confessed to the robberies, telling the police that all of the guns he had used were fakes that he had thrown away. [Id. at ¶ 9]. The Defendant told police that he had also attempted to rob a fourth bank and that he had participated in three additional robberies—two robberies of Mexican grocery stores and one of a Dunkin Donuts store. [Id.].

A federal grand jury indicted the Defendant and charged him with three counts of bank robbery, in violation of 18 U.S.C. § 2113(a); three counts of armed bank robbery, in violation of 18 U.S.C. § 2113(d); one count of

3

kidnapping during a bank robbery, in violation of 18 U.S.C. § 2113(e); and three counts of brandishing a firearm during and in relation to a crime of violence, 18 U.S.C. § 924(c)(1). [Doc. 19: Superseding Bill of Indictment]. The Defendant entered into a plea agreement with the United States and pleaded guilty to three counts of armed bank robbery and one count of kidnapping during a bank robbery. [Id.; Doc. 25: Amended Plea Agreement at ¶ 1]. In exchange for the Defendant's guilty plea as to these counts, the Government agreed to dismiss the other charges set forth in the Superseding Bill of Indictment, including the three § 924(c) charges. [See Doc. 25: Amended Plea Agreement at ¶ 2].

Prior to sentencing, the probation office prepared a Presentence Report, which calculated a total offense level of 31 for the bank robbery offenses. [Doc. 38: PSR at ¶ 56]. When this offense level was combined with a criminal history category of I, the Sentencing Guidelines advised a sentence of between 108 and 135 months' imprisonment. [Id. at ¶ 86]. The probation officer noted that the Defendant faced a statutory mandatory minimum sentence of ten years' imprisonment for the kidnapping offense, thereby increasing the advisory guideline range to between 120 and 135 months' imprisonment. [Id. at ¶¶ 85-86].

At sentencing, the Court explicitly found that the facts of Defendant's crimes made his case exceptional, warranting an above-guidelines sentence in light of the § 3553(a) factors. Specifically, the Court explained that this upward variance sentence was warranted because the guideline range did not account for the home invasion, carjacking, threats of violence against the first victim's children, kidnapping of the children, and the mental anguish inflicted on the first victim and her children. [Doc. 46: Statement of Reasons at 3]. The Court sentenced the Defendant to 108 months' imprisonment for two of the armed bank robbery offenses, to run concurrently, and to 300 months for the third armed bank robbery and kidnapping offenses, to run concurrently with each other and consecutively to the 108-month sentence, for an aggregate sentence of 408 months' imprisonment. [Doc. 45: Judgment at 2].

The Defendant appealed. [Doc. 47]. The Court of Appeals for the Fourth Circuit affirmed his conviction and sentence, finding that this Court had not committed any procedural or substantive error in sentencing the Defendant.[1] [Doc. 60].

---

[1] In 2015, this Court granted in part the Defendant's motion to vacate pursuant to 28 U.S.C. § 2255 on the grounds that two of the Defendant's bank robbery convictions (Counts Two and Three) were multiplicitous and that the Defendant's counsel rendered ineffective assistance in failing to raise this issue. [Doc. 66]. Accordingly, the Court

5

The Defendant is currently incarcerated at USP Yazoo City with a projected release date of February 17, 2038.[2] In October 2021, the Defendant filed the present motion, seeking a reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) for "extraordinary and compelling reasons." [Doc. 76]. Specifically, the Defendant argues that there has been a change in the law regarding the stacking of § 924(c) convictions, and that if he were sentenced today, he would receive a substantially lower sentence. [Id. at 23-25]. He further cites his "extraordinary job in rehabilitating himself" while in prison, as well as his youth at the time of his offenses. [Id. at 25-35].

The Government filed a response in opposition to the Defendant's motion on December 22, 2021. [Doc. 79]. Thereafter, the Defendant filed a reply. [Doc. 80]. Having been fully briefed, this matter is ripe for disposition.

## II. DISCUSSION

Section 3582(c)(1)(A), as amended by The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018), permits a defendant to seek a modification of his sentence for "extraordinary and compelling

---

vacated the Defendant's conviction and sentence as to Count Two. All other terms of the Defendant's original Judgment, including the Defendant's conviction and 300-month sentence for Count Three, remained unaffected by this ruling. [See Doc. 67: Amended Judgment].

[2] See https://www.bop.gov/inmateloc/ (last accessed Jan. 26, 2022).

reasons," if the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A).  Here, the Government does not dispute that the Defendant has sufficiently exhausted his administrative remedies with BOP by requesting compassionate release from the Warden.  [Doc. 79 at 4]. Accordingly, the Court will proceed to address the merits of the Defendant's compassionate release request.

As is relevant here, the Court may reduce a defendant's sentence under 18 U.S.C. § 3582(c)(1)(A)(i) for "extraordinary and compelling reasons if "such reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i).  The Court must also consider the factors set forth in 18 U.S.C. § 3553(a), to the extent that such factors are applicable.  Id.

Section 1B1.13 of the United States Sentencing Guidelines sets forth the Sentencing Commission's policy statement applicable to compassionate release reductions.  See U.S.S.G. § 1B1.13.  Specifically, the commentary to Sentencing Guidelines § 1B1.13 provides specific and limited grounds for release under § 3582(c)(1)(A).  These include (1) a terminal illness; or (2) a

serious physical or medical condition, a serious functional or cognitive impairment, or deteriorating physical or mental health because of the aging process that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A). A defendant's age may also warrant compassionate release, if (1) the defendant is at least 65 years old, (2) is experiencing a serious deterioration in physical or mental health because of the aging process, and (3) has served at least 10 years or 75% of his term of imprisonment, whichever is less. Id., § 1B1.13 cmt. n.1(B).

The policy statement set forth in § 1B1.13, however, is not binding on this Court. Section 1B1.13 was adopted before the First Step Act, and the Sentencing Commission has not updated the policy statement to account for the fact that defendants are now permitted to file their own motions for compassionate release. In light of these circumstances, the Fourth Circuit Court of Appeals has held that § 1B1.13 is no longer an "applicable" policy statement that constrains the discretion of the district courts in finding that "extraordinary and compelling reasons" exists to warrant a reduction in sentence. See United States v. McCoy, 981 F.3d 271, 282 (4th Cir. 2020) ("By its plain terms, . . . § 1B1.13 does not apply to defendant-filed motions

8

under § 3582(c)(1)(A)"). Thus, while this policy statement "remains helpful guidance even when motions are filed by defendants," id. at 282 n.7, this Court is "empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise." Id. at 284 (quoting United States v. Zullo, 976 F.3d 228, 230 (2d Cir. 2020)).

Here, the Defendant primarily relies on a recent change in sentencing law as a basis for his request for compassionate release.³ Section 403(a) of the First Step Act of 2018 amended 18 U.S.C. § 924(c) to remove the possibility that a defendant will receive "stacked" § 924(c) sentences by requiring that the 25-year mandatory minimum that applies for a second or successive § 924(c) conviction applies only "when a prior § 924(c) conviction arises from a separate case and already has become final." First Step Act of 2018 § 403(a), Pub. L. No. 115-391, 132 Stat. 5194, 5222. This

---

³ The Defendant makes a passing reference to having "concerns and fears about the spread and effects of COVID-19." [Doc. 76 at 2]. To the extent that the Defendant is attempting to assert that the COVID-19 pandemic constitutes an "extraordinary and compelling" reason for his release, his argument fails. See United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); see also United States v. Lemons, 15 F. 4th 747, 751 (6th Cir. Oct. 8, 2021) ("a defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an "extraordinary and compelling reason" warranting a sentence reduction….[T]o the extent prisons do offer some unique challenges, the vaccine now significantly reduces the risks associated with COVID-19.").

9

amendment did not apply retroactively to sentences imposed before December 21, 2018, the effective date of the First Step Act. Id. § 403(b).

In McCoy, the Fourth Circuit recognized that district courts may "consider changes in sentencing law as part of the 'extraordinary and compelling reasons' inquiry." 981 F.3d at 287-88. Specifically, in McCoy, the Fourth Circuit affirmed the district courts' findings that "the severity of a § 924(c) sentence, combined with the enormous disparity between that sentence and the sentence a defendant would receive today, can constitute an 'extraordinary and compelling' reason for relief under § 3582(c)(1)(A)." Id. at 285. "Nothing in McCoy, however, requires the court to reduce a defendant's sentence once the defendant shows that new statutory or case law would have benefitted the defendant, if such law had existed at the time of the defendant's sentencing." United States v. Spencer, 521 F. Supp. 3d 606, 610 (E.D. Va.), aff'd, 853 F. App'x 833 (4th Cir. 2021). Rather, the Court cautioned that the determination of whether a sentence reduction should be based on a "full consideration of the Defendant's individual circumstances," including the length of time already served, any rehabilitative efforts made while incarcerated, the defendant's prior criminal history, and the defendant's age at the time of the offense. McCoy, 981 F.3d at 286.

Here, the Defendant's request for compassionate release is based on the incorrect premise that he received "stacked" sentences that he would not receive if he were sentenced today. The Defendant, however, did not plead guilty to any § 924(c) offenses; those three counts were dismissed upon his pleading guilty to the other bank robbery offenses. To the extent that the Defendants contends that his bank robbery offenses were improperly "stacked," his argument was misplaced. When multiple terms of imprisonment are imposed on a defendant at the same time, the Court may run those terms consecutively in order to achieve the sentencing objectives set forth in § 3553(a). See 18 U.S.C. § 3584. Here, the Court ran certain of the Defendant's sentences consecutively in order to achieve a sentence of 408 months, a sentence that in the Court's view was adequate but not greater than necessary to serve the sentencing objectives described in § 3553(a). None of the changes implemented by The First Step Act would have changed this calculus. Accordingly, the subsequent changes in sentencing law brought about by The First Step Act do not constitute an "extraordinary and compelling" reason for the Defendant's release.

The Defendant also argues that this Court should grant his motion for compassionate release because of his youth at the time of his offenses. Specifically, the Defendant asserts that he "was under 21 years, a teenager

at the time of the offense…." [See Doc. 76 at 28]. The Presentence Report, however, reflects that the Defendant was born in 1986; thus, he was 22 and 23 years old at the time he committed his bank robbery offenses. While he was young, he had been an adult for several years, and certainly was no longer a "teenager" as he claims. Notwithstanding his relative youth, the § 3553(a) sentencing factors supported the Defendant's 408-month sentence. The Defendant's offense conduct was extraordinarily serious. He threatened and kidnapped two children, along with a bank employee, at their home before leaving the children—bound with duct tape—at the home by themselves and forcing the employee to accompany him to the bank where she worked and facilitating his robbery of the bank. The Defendant also committed two additional robberies, each time threatening employees with what appeared to be firearms. He stole large quantities of cash and endangered the lives of numerous bank employees. The nature and circumstances of the offense, the need to protect the public, the need to promote respect for the law, and the need to deter the Defendant and others from committing similar crimes all weighed in favor the lengthy sentence that he received. Under these circumstances, the Court concludes that the Defendant's relative youth at the time he committed these offenses does not

constitute an "extraordinary and compelling" reason for compassionate release.

Finally, the Defendant cites his extraordinary efforts at rehabilitation while in prison as a basis for relief. [Doc. 76 at 25]. It appears that the Defendant has completed over 50 educational courses or work programs during his incarceration and has not incurred any disciplinary infractions. [See Doc. 79-1]. He also has submitted letters of support from a number of family members and prison staff. [See Doc. 76-1]. The Defendant's efforts at rehabilitation are indeed commendable. However, Congress has made clear that rehabilitation of the defendant alone "shall not be considered an extraordinary and compelling reason" for a modification. 28 U.S.C. § 994(t).

Having considered all the facts and grounds put forward by the Defendant, the Court finds and concludes that, taken either singly or in combination, these facts and grounds fail to constitute extraordinary and compelling reasons for granting the Defendant compassionate release.

Even if the Defendant had demonstrated "extraordinary and compelling reasons" for his release, the Court must still consider the § 3553(a) sentencing factors "to the extent that they are applicable" in deciding whether to reduce a defendant's sentence in the exercise of its discretion. See United States v. Jenkins, -- F. 4th --, 2021 WL 6130105, at *5 (4th Cir. Dec.

29, 2021) (citing 18 U.S.C. § 3582(c)(1)(A)).  Here, for the reasons stated above, evaluation of the § 3553(a) factors continue to weigh in favor of the Defendant's continued incarceration.

For all these reasons, the Court finds that there are no "extraordinary and compelling reasons" for the Defendant's release and that analysis of the relevant § 3553(a) factors weigh in favor of his continued incarceration. Accordingly, the Defendant's motion for compassionate release is denied.

**IT IS, THEREFORE, ORDERED** that the Defendant's "Motion for Compassionate Release…" [Doc. 76] is **DENIED**.

**IT IS SO ORDERED.**

Signed: February 2, 2022

Martin Reidinger
Chief United States District Judge